**12 PAGES**
PAUL J. PASCUZZI, State Bar No. 148810
NICHOLAS L. KOHLMEYER, State Bar No. 299087
FELDERSTEIN FITZGERALD
WILLOUGHBY PASCUZZI & RIOS LLP
500 Capitol Mall, Suite 2250
Sacramento, CA 95814
Telephone: (916) 329-7400
Fax: (916) 329-7435
ppascuzzi@ffwplaw.com
nkohlmeyer@ffwplaw.com

CLIFFORD W. STEVENS, State Bar No. 148918
PAUL N. BALESTRACCI, State Bar No. 83987
MICHAEL R. TENER, State Bar No. 253790
NEUMILLER & BEARDSLEE
A PROFESSIONAL CORPORATION
P.O. Box 20
Stockton, CA 95201-3020
Telephone: (209) 948-8200
Facsimile: (209) 948-4910
cstevens@neumiller.com
pbalestracci@neumiller.com

Attorneys for The Roman Catholic Bishop of
Stockton, a California corporation sole

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA, SACRAMENTO DIVISION

| | |
|---|---|
| In re:<br><br>THE ROMAN CATHOLIC BISHOP OF STOCKTON, a California corporation sole,<br><br>       Reorganized Debtor. | Case No. 14-20371-C-11 |
| JOHN JK DOE #1, an individual; JOHN TK DOE #2, an individual; and JOHN ML DOE #3, an individual;<br><br>       Plaintiffs,<br><br>vs.<br><br>DIOCESE OF STOCKTON; ST. ANNE'S PARISH; FATHER OLIVER FRANCIS O'GRADY; BISHOP ROGER MAHONY; and ROES 1 to 500, inclusive,<br><br>       Defendants. | **NOTICE OF REMOVAL** |

**PLEASE TAKE NOTICE** that the Roman Catholic Bishop of Stockton ("RCB") hereby removes California Superior Court, San Joaquin County Case No. STK-CV-UPI-2020-11094 entitled <u>John JK Doe #1, John TK Doe #2, John ML Doe #3 v. Diocese of Stockton, et al.,</u> ("State Court Action") to the United States Bankruptcy Court, Eastern District of California, Sacramento Division.

1.      On January 15, 2014, the RCB filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code, commencing the above-captioned case.

2.      The RCB commenced its Chapter 11 reorganization case to restructure its financial affairs to, among other things, fairly, justly and equitably compensate all of its creditors, including victims of childhood sexual abuse (known and unknown) by clergy or others associated with the RCB, trade creditors, and others.

3.      On October 26, 2017, the RCB filed its Debtor's Plan of Reorganization Dated October 26, 2016 (the "Plan"). Dkt. No. 757. The Court entered Findings of Fact and Conclusions of Law Regarding Debtor's Plan of Reorganization Dated October 26, 2016, on January 10, 2017 (the "Plan Findings"). Dkt. No. 839. On January 13, 2017, the Court entered its Corrected Order Confirming Debtor's Plan of Reorganization Dated October 26, 2016 (the "Confirmation Order"). Dkt. No. 843. The Effective Date under the Plan occurred on February 14, 2017. Dkt. No. 846.

4.      On June 12, 2017, the Court entered its order authorizing entry of final decree and closing the RCB's Chapter 11 case. Dkt. No. 949.

5.      On February 15, 2022, John JK Doe #1, et al., (collectively "Plaintiffs") filed the first amended complaint naming specific defendants for the first time. A copy of the first amended complaint filed in the State Court Action on February 15, 2022, is attached hereto as **Exhibit A**. The first amended complaint was served on the RCB on March 1, 2022.

6.      The Plaintiffs' claims in the State Court Action involve claims that arose pre-petition. Plaintiffs' claims against the RCB and other defendants (except defendant Oliver O'Grady) were discharged and enjoined by the Plan. The RCB is informed and believes that Plaintiffs contend that their claims were not discharged and enjoined by the Plan because at the time the bankruptcy case was commenced such claims were subject to a statute of limitations

affirmative defense and now the California legislature has revised the statute of limitations. To the contrary, both the confirmation order and the Plan specifically state that such claims are discharged and subject to the injunctive provisions of the Plan: "For purposes of clarity, the Debtor and the Reorganized Debtor shall be discharged from and their liability shall be extinguished completely as to any Tort Claim, including any Tort Claim that was barred by the applicable statute of limitations as of the Bar Date but may be no longer barred by the applicable statute of limitations in the future for any reason, including, for example, the passing of legislation that revives such previously time-barred Tort Claim." *See* Confirmation Order at ¶¶ 6 and 20(c) (same); *see also* Plan §§ 30.1(c) and 30.5(c) (same). As such, Plaintiffs have violated the discharge and other injunctions in the Plan and Confirmation Order, for which the RCB will be seeking appropriate relief from the Bankruptcy Court.

7.      Jurisdiction is proper pursuant to 28 U.S.C. Section 1334 because the claims asserted in the State Court Action arise in and under a case under Title 11. *See In re Ray*, 624 F.3d 1124, 1131 (9th Cir. 2010) ("A matter 'arises under' the Bankruptcy Code if its existence depends on a substantive provision of bankruptcy law, that is, if it involves a cause of action created or determined by a statutory provision of the Bankruptcy Code … A proceeding 'arises in' a case under the Bankruptcy Code if it is an administrative matter unique to the bankruptcy process that has no independent existence outside of bankruptcy and could not be brought in another forum, but whose cause of action is not expressly rooted in the Bankruptcy Code."). Further, the Bankruptcy Court retained jurisdiction in the Plan to enforce any provisions of the Plan including the discharge and injunctive provisions of the Plan. See Plan § 32.3. Removal of the State Court Action is appropriate pursuant to the provisions of 28 U.S.C. Section 1452. Venue is appropriate as the Eastern District of California is the district for San Joaquin County, where the State Court Action was pending.

8.      The RCB consents to entry of final orders or judgment by the Bankruptcy Court.

9.      The RCB submits that the main bankruptcy case need not be reopened for the Bankruptcy Court to determine the issues related to the removed action. *See Menk v. LaPaglia*, 241 B.R. 896, 905 (9th Cir. BAP 1999) "[V]arious aspects of the bankruptcy court's § 1334(b)

1  jurisdiction continue after a case is either closed or dismissed."); *see also*, *Sundquist v. Bank of*

2  *Am., N.A.*, 576 B.R. 858, 873 (Bankr. E.D. Cal. 2017) ("Much bankruptcy-related activity may

3  occur without reopening a case: automatic stay enforcement; dischargeability actions; awards of

4  compensation; imposition of sanctions; determinations of equitable subordination; contempt;

5  dealing with unclaimed funds; motions for post-judgment relief; execution of judgments."). Thus,

6  the RCB respectfully requests the Bankruptcy Court not reopen the main bankruptcy case based

7  on this notice of removal.

8  Dated: March 29, 2022

9                                    FELDERSTEIN FITZGERALD WILLOUGHBY
                                     PASCUZZI & RIOS LLP
10

11                     By:    */s/ Paul J. Pascuzzi*
                              PAUL J. PASCUZZI
12                            Attorneys for The Roman Catholic Bishop
                              of Stockton, a corporation sole

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NOTICE OF REMOVAL

# EXHIBIT A

1    Joshua J.K. Henderson (State Bar No. 248366)
      Joshua S. Markowitz (State Bar No. 224256)
2    Carcione, Henderson & Markowitz, LLP
      477 Ninth Avenue, Suite 101
3    San Mateo, CA  94402
      Tel: (650) 367-6811
4    Fax: (650) 367-0367
5    e-mail: info@chmlawfirm.com

6    Attorneys for Plaintiff(s),
      JOHN JK DOE #1;
7    JOHN TK DOE #2; and,
8    JOHN ML DOE #3

Electronically Filed
Superior Court of California
County of San Joaquin
2022-02-15 11:49:58
Clerk: Kristy Kobus

9

10           SUPERIOR COURT OF THE STATE OF CALIFORNIA

11             IN AND FOR THE COUNTY OF SAN JOAQUIN

12

13

14   JOHN JK DOE #1, AN INDIVIDUAL;
     JOHN TK DOE #2, AN INDIVIDUAL; AND
15   JOHN ML DOE #3, AN INDIVIDUAL,

16          Plaintiffs,

17   vs.

18   DIOCESE OF STOCKTON; ST. ANNE'S
19   PARISH; FATHER OLIVER FRANCIS
     O'GRADY; BISHOP ROGER MAHONY;
20   AND ROES 1 to 500, inclusive,

21          Defendants

22

Case No.: STK-CV-UPI-2020-11094

AMENDED COMPLAINT FOR DAMAGES FOR:

1.     SEXUAL BATTERY;
2.     NEGLIGENCE;
3.     COVER-UP OF SEXUAL BATTERY

[DEMAND FOR JURY TRIAL]

23

24

25

26

27

28

Plaintiffs, for their causes of action against Defendants, alleges that:

## **PARTIES**

1.     At all times mentioned herein, JOHN JK DOE #1 (hereinafter "DOE #1") was a resident of the State of California at all times relevant to this Complaint.  The name used herein by Plaintiff is a pseudonym.  Plaintiff is a victim of childhood sexual molestation and abuse. Plaintiff was a minor during the entire time of the sexual abuse alleged herein.  DOE #1, an adult male, who is 54 years old, and was born in North Dakota, and is the brother of JOHN TK DOE #2.

2.     At all times mentioned herein, JOHN TK DOE #2 (hereinafter "DOE #2") was a resident of the State of California at all times relevant to this Complaint.  The name used herein by Plaintiff is a pseudonym.  Plaintiff is a victim of childhood sexual molestation and abuse. Plaintiff was a minor during the entire time of the sexual abuse alleged herein.  DOE #2, an adult male, was born in North Dakota and is 57 years old, and is the brother of JOHN JK DOE #1.

3.     At all times mentioned herein, JOHN ML DOE #3 (hereinafter "DOE #3") was a resident of the State of California at all times relevant to this Complaint.  The name used herein by Plaintiff is a pseudonym.  Plaintiff is a victim of childhood sexual molestation and abuse. Plaintiff was a minor during the entire time of the sexual abuse alleged herein.  DOE #3, an adult male, was born in Lodi, California, and is 54 years old.

4.     Plaintiffs are using a pseudonym herein so as to protect their privacy interests. Collectively, they shall be referred to as "DOE PLAINTIFFS".  Defendants will be notified of Plaintiffs' true and correct name via separate cover letter.

5.     Defendant DIOCESE OF STOCKTON (hereinafter "DIOCESE"), a corporation sole, is a non-profit religious organization with its principal place of business in Stockton, California.

6.     Defendant ST. ANNE'S PARISH (hereinafter "PARISH"), at all times material hereto, is a Roman Catholic church, parish or school located in Lodi, California.  Defendant PARISH is the school or parish or other organization where Plaintiffs' were members during the period of wrongful conduct.

7.     Defendant FATHER OLIVER FRANCIS O'GRADY (hereinafter "PERPETRATOR") was at all times relevant an ordained priest in the Roman Catholic Church. During the dates of abuse, "PERPETRATOR" was a practicing priest assigned to Defendant DIOCESE, Defendant PARISH and ROES 1 - 500, and was under the direct supervision, employ and control of Defendant DIOCESE, Defendant PARISH and ROES 1 – 500.

8.     Defendant BISHOP ROGER MAHONY (was at all times relevant the Bishop of the Roman Catholic Church for the DIOCESE.

9.     The true names and capacities, whether individual, corporate, associate or otherwise, of defendant ROES 1 through 500 are unknown to DOE PLAINTIFFS', who therefore sues said defendants by such fictitious names.  When the true names and capacities of said defendants have been ascertained, DOE PLAINTIFFS' will seek leave of court to amend this complaint to allege such true names and capacities.  DOE PLAINTIFFS' are informed and believe and base thereon alleges that each of the defendants designated as a doe herein is liable in some manner for the acts, occurrences and omissions hereinafter alleged.

10.     DOE PLAINTIFFS' are informed and believes and based thereon alleges that at all times material hereto each defendant was the agent, servant, employee and/or representative of each remaining defendant, and was at all times acting within the course and scope of said agency, service, employment and/or representation, and did the acts herein alleged with the permission and consent of each other defendant.

**COMMON ALLEGATIONS APPLICABLE TO ALL COUNTS**

11.     DOE #1 was molested by PERPETRATOR from the ages of 9 to 12 while he was attending the middle school run by Defendant PARISH.  DOE # 1 saw PERPETRATOR as a respected authority figure whose instructions must be obeyed.  DOE #1 lived in constant dread over PERPETRATOR instructing DOE #1 to permit the fondling, as well as constant shame.

12.     Long after the sexual assaults stopped, DOE #1 continued to suffer the pervasive effects of the sexual assault and untreated trauma that had a profound effect on his entire life.  An A student before the molestations began, DOE #1's grades fell to C's.  DOE #1 suffers from

distraction and inability to focus, sequalae of untreated childhood trauma. The trauma has greatly impacted his sexual activities even to this day with his wife. He has Post-Traumatic Stress Disorder. Although raised a Catholic, DOE #1 no longer can find solace and support from his Church.

13.     DOE #2 was molested by PERPETRATOR from the ages of 11 to 12 while he was attending the middle school run by Defendant PARISH. DOE # 1 saw PERPETRATOR as a church leader to be admired, who commanded everyone's respect and exuded authority. Because of his parents' respect for the Church and their open admiration of PERPETRATOR, DOE #2 believed that he was compelled to do what PERPETRATOR asked, and believed that he could not tell anyone about what was happening, forcing DOE #2 to live in shame, and caused him to believe that he had done something wrong to deserve what was happening to him.

14.     Long after the sexual assaults stopped, DOE #2 continued to suffer the pervasive effects of the sexual assault and untreated trauma that had a profound effect on his entire life. The trauma turned DOE #2 into an angry child. His grades dropped precipitously, which angered his parents, and further isolated DOE #2, because he could not tell his parents what was causing his injury. Because of his grades and anger, he did not go on to college. While DOE #2 was devout as a child, he turned against the Church, and it became a target for his anger, instead of the balm to his soul it was supposed to be. The trauma has greatly impacted his sexual activities even to this day with his wife. He has Post-Traumatic Stress Disorder. While continuing to believe in God, DOE #2 is no longer a member of the Catholic Church.

15.     DOE #3 was molested by PERPETRATOR from the ages of 9 to 11 while he was attending the middle school run by Defendant PARISH. DOE # 1 saw PERPETRATOR as a someone who was authorized by the Church and must be obeyed. These assaults left DOE #3 in shame and full of rage and isolated from his family.

16.     Long after the sexual assaults stopped, DOE #3 continued to suffer the pervasive effects of the sexual assault and untreated trauma that had a profound effect on his entire life. The trauma turned DOE #3 into an angry child. His relationships with his family, as well as his former relationship with his ex-wife, were impacted by DOE #3's anger and inability to trust that

1    resulted from these assaults.  He has severe anxiety and panic attacks, as well as Post-Traumatic

2    Stress Disorder.  He has lost his faith.

3          17.     Although DOE PLAINTIFFS were 3 of many young children assaulted by

4    PERPETRATOR, they each were forced to suffer alone, believing they was something wrong

5    specifically with them, that they had done something to deserve their suffering.  But it was not

6    PERPETRATOR who inflicted this injury, but DIOCESE, PARISH and BISHOP, and

7    DEFENDANT DOES 1 through 500, who inflicted this injury by working to knowingly cover up

8    and protect PERPETRATOR.  With full knowledge of PERPETRATOR's horrific conduct,

9    DIOCESE, PARISH and BISHOP continued to move PERPETRATOR to different positions

10   after his molestations came to light.  Not only did this allow many others to be cruelly victimized

11   by PERPETRATOR, but by preventing PERPETRATOR's discovery, it allowed PLAINTIFF

12   DOES to continue to believe they were alone, and most critically, prevented them from receiving

13   the trauma focused therapy and care that might have made a tremendous difference in the rest of

14   their lives.  PERPETRATOR took DOE PLAINTIFFS' innocence, but DIOCESE, PARISH and

15   BISHOP willingly sacrificed DOE PLAINTIFFS' opportunity to heal, all to protect themselves

16   and the Church.

17

18   **FIRST CAUSE OF ACTION**

19   **SEXUAL BATTERY**

20   **(California Civil Code Section 1708.5)**

21         18.     Plaintiff incorporates herein by this reference each and every allegation contained

22   in this complaint as if fully set forth herein.

23         19.     PERPETRATOR touched an intimate part of the minor DOE PLAINTIFFS'

24   bodies while the minors were under his care and supervision.  The sexual touching was against

25   Plaintiffs' wills and was done for the purpose of sexual arousal, sexual gratification or sexual

26   abuse.  PERPETRATOR committed sexual battery against DOE PLAINTIFFS as defined under

27   California Civil Code Section 1708.5.

28

20.     As a direct result of defendants' afore stated conduct while Plaintiffs were minors, Plaintiffs have suffered the injuries described herein.

21.     PERPETRATOR's conduct was extreme, outrageous, egregious and malicious. Therefore, punitive damages are appropriate to punish Defendants, and each of them, for their conduct as set forth throughout the present complaint.

22.     PERPETRATOR was only in a position to commit these acts because Defendants DIOCESE, PARISH, and DEFENDANT DOES 1 through 500 had actively covered up PERPETRATOR's prior sexual batteries.

## SECOND CAUSE OF ACTION

## NEGLIGENCE

23.     Plaintiff incorporates herein by this reference each and every allegation contained in this complaint as if fully set forth herein.

24.     Defendants DIOCESE, PARISH, and DEFENDANT DOES 1 through 500, owed DOE PLAINTIFFS a duty of care as they were students in Defendants' school, and members of Defendants' Church.

25.     Defendants DIOCESE, PARISH, and DEFENDANT DOES 1 through 500, breached the duty of care they owed DOE PLAINTIFFS by, inter alia, negligently hiring, training, and supervising PERPETRATOR.

26.     As a direct result of Defendants' afore referenced conduct, DOE PLAINTIFFS have suffered the injuries described herein.

## THIRD CAUSE OF ACTION

## COVER-UP OF SEXUAL BATTERY

27.     Plaintiff incorporates herein by this reference each and every allegation contained in this complaint as if fully set forth herein.

28.     Subsequent to the herein described sexual battery, Defendants DIOCESE, PARISH, and BISHOP learned of PERPETRATOR's continued pattern of sexual battery.

29.    Although Defendants DIOCESE, PARISH, and BISHOP were in positions of authority over DOE PLAINTIFFS, and owed DOE PLAINTIFFS a duty to provide aid and care and to protect DOE PLAINTIFFS, instead of alerting the authorities and finding and aiding PERPETRATOR's victims, Defendants DIOCESE, PARISH, and BISHOP, engaged in an intentional course of conduct to conceal PERPETRATOR's conduct by moving him around the DIOCESE every time complaints began to be received.

30.    As a direct and proximate result of Defendants DIOCESE, PARISH, and BISHOP's conduct in covering up PERPETRATOR's sexual batteries, DOE PLAINTIFFS suffered significant additional injury, and the emotional injuries caused by PERPATRATOR were made significantly worse.  This conduct forced DOE PLAINTIFFS' to suffer for decades believing they were alone, and had done something wrong.  Further, by preventing PERPETRATOR's crimes from coming to light, DOE PLAINTIFFS' went decades without being treated for the trauma they suffered.

WHEREFORE, Plaintiff prays for judgment against defendants and each of them as follows:

    a.    For general damages in a sum which will be shown according to proof;

    b.    For medical expenses, loss of earnings and other incidental expenses according to proof;

    c.    Punitive damages;

    d.    For prejudgment interest;

    e.    For costs of suit incurred; and

    f.    For such other and further relief as the Court deems just and proper.

## JURY TRIAL DEMAND

Plaintiffs demand a jury trial on all issues so triable.

Dated: February 15, 2022

Joshua S. Markowitz

AMENDED COMPLAINT FOR DAMAGES