**13 PAGES**
PAUL J. PASCUZZI, State Bar No. 148810
NICHOLAS L. KOHLMEYER, State Bar No. 299087
FELDERSTEIN FITZGERALD
WILLOUGHBY PASCUZZI & RIOS LLP
500 Capitol Mall, Suite 2250
Sacramento, CA 95814
Telephone: (916) 329-7400
Fax: (916) 329-7435
ppascuzzi@ffwplaw.com
nkohlmeyer@ffwplaw.com

CLIFFORD W. STEVENS, State Bar No. 148918
PAUL N. BALESTRACCI, State Bar No. 83987
MICHAEL R. TENER, State Bar No. 253790
NEUMILLER & BEARDSLEE
A PROFESSIONAL CORPORATION
P.O. Box 20
Stockton, CA 95201-3020
Telephone: (209) 948-8200
Facsimile: (209) 948-4910
cstevens@neumiller.com
pbalestracci@neumiller.com

Attorneys for The Roman Catholic Bishop of
Stockton, Pastor of St. Anne Church, Cardinal Roger
Mahony

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA, SACRAMENTO DIVISION

| | |
|---|---|
| In re:<br><br>THE ROMAN CATHOLIC BISHOP OF STOCKTON, a corporation sole,<br><br>Reorganized Debtor. | Case No. 14-20371-C-11<br><br>Adversary No.: 22-02019<br><br>DCN: FWP-1 |
| JOHN JK DOE #1, an individual; JOHN TK DOE #2, an individual; and JOHN ML DOE #3, an individual;<br><br>Plaintiffs,<br><br>vs.<br><br>DIOCESE OF STOCKTON; ST. ANNE'S PARISH; FATHER OLIVER FRANCIS O'GRADY; BISHOP ROGER MAHONY; and ROES 1 to 500, inclusive,<br><br>Defendants. | Date:      May 4, 2022<br>Time:     11:00 a.m.<br>Place:    501 I Street, 6th Floor<br>              Courtroom 35<br>              Sacramento, CA<br>              Hon. Christopher M. Klein<br><br>**DEFENDANTS' ROMAN CATHOLIC BISHOP OF STOCKTON, PASTOR OF ST. ANNE CHURCH AND CARDINAL ROGER MAHONY MOTION TO DISMISS UNDER RULE 12(b)(6); TO ENFORCE DISCHARGE AND PLAN INJUNCTION; AND FOR CONTEMPT FOR VIOLATION OF DISCHARGE AND PLAN INJUNCTION** |

Defendants' Motion to Dismiss and for Contempt

1    Defendants the Roman Catholic Bishop of Stockton, a corporation sole ("RCB"), Pastor

2  of St. Anne Church ("St. Anne Church") and Cardinal Roger Mahony ("Cardinal Mahony")

3  (collectively, RCB, St. Anne Church and Cardinal Mahony are referred to as the "Defendant

4  Moving Parties")[1] hereby move to dismiss the claims asserted in the above-captioned adversary

5  action against the Defendant Moving Parties under Federal Rule of Civil Procedure 12(b)(6),

6  incorporated herein by Federal Rule of Bankruptcy Procedure 7012, to enforce the discharge and

7  Plan injunction, and for contempt for violation of the discharge and Plan injunction (the

8  "Motion").[2]

9    As explained in more detail below, Plaintiffs' claims in this removed action constitute Tort

10  Claims that were discharged and enjoined by the RCB's confirmed Chapter 11 plan as the claims

11  are based upon allegations that the Defendant Moving Parties are responsible for physical abuse

12  that is alleged to have occurred in or before 1980.  These pre-petition claims were treated by the

13  confirmed plan as Tort Claims, including being discharged and subject to the injunctions

14  prohibiting prosecution of the litigation filed by Plaintiffs against the Defendant Moving Parties.

15    The RCB continues to offer its deepest sympathies and prayers to Plaintiffs and all

16  survivors of sexual assault.  The RCB further notes that Plaintiffs are not without a potential

17  remedy.  The Plan provides for recovery for claimants holding an allowed Unknown Tort Claim

18  as defined under the Plan in Class 15.  Further, as is the practice of the RCB, the RCB has offered

19  assistance      through      its      Diocesan      Victim      Assistance      Ministry.      *See*

20  https://stocktondiocese.org/victims-assistance-ministry.  However, Plaintiffs' litigation against the

21  Defendant Moving Parties is prohibited by the Plan and must be dismissed.

22                                    **JURISDICTION**

23    Jurisdiction is proper pursuant to 28 U.S.C. Section 1334 because the claims asserted in

24  the First Amended Complaint arise in and under a case under Title 11.  *See In re Ray*, 624 F.3d

---

[1]  The correct legal name for the "Diocese of Stockton" is the Roman Catholic Bishop of Stockton.
The correct legal name for "St. Anne's Parish" is Pastor of St. Anne Church.  Cardinal Roger
Mahony is a former Bishop of Stockton appointed in 1980.  Since 1991, his proper title has been
Cardinal Roger Mahony.

[2]  Capitalized terms not otherwise defined herein have the meaning defined in the Plan. Dkt. No.
757.

1124, 1131 (9th Cir. 2010) ("A matter 'arises under' the Bankruptcy Code if its existence depends on a substantive provision of bankruptcy law, that is, if it involves a cause of action created or determined by a statutory provision of the Bankruptcy Code…A proceeding 'arises in' a case under the Bankruptcy Code if it is an administrative matter unique to the bankruptcy process that has no independent existence outside of bankruptcy and could not be brought in another forum, but whose cause of action is not expressly rooted in the Bankruptcy Code."). Further, the Bankruptcy Court retained jurisdiction in the Plan to enforce any provisions of the Plan including the discharge and injunctive provisions of the Plan. *See* Plan § 32.3. Venue is appropriate as the Eastern District of California is the district for San Joaquin County, where the State Court Action was pending and where the main bankruptcy case was filed.

**RELIEF REQUESTED**

By this Motion, Defendant Moving Parties request the Court to enter an order as follows:

1.　　　Dismissing the claims against the Defendant Moving Parties in the First Amended Complaint with prejudice;

2.　　　Finding Plaintiffs' attorneys in contempt for violating the discharge and injunctions in the Plan and Confirmation Order;

3.　　　Awarding the Defendant Moving Parties their reasonable attorneys' fees and costs and compensatory damages, subject to further proof; and

4.　　　For such other and further relief as the Court deems just.

**BASIS FOR MOTION**

**The RCB's Bankruptcy Case and Confirmed Chapter 11 Plan**

1.　　　On January 15, 2014, (the "Petition Date") the RCB filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code, commencing the above-captioned main bankruptcy case.

2.　　　The RCB commenced its Chapter 11 reorganization case to restructure its financial affairs to, among other things, fairly, justly and equitably compensate all of its creditors, including survivors of childhood sexual abuse (known and unknown) by clergy or others associated with the RCB, trade creditors, and others.

Defendants' Motion to Dismiss and for Contempt

3.      The RCB faced numerous lawsuits over many years asserting child sexual abuse claims based upon the conduct of persons no longer associated with the church and the possibility of additional claims in the future that the RCB could not sustain.  The RCB's Chapter 11 reorganization case was filed to provide a fair and comprehensive process for administering all claims against the RCB to avoid limited recoveries for only those plaintiffs who were first to the courthouse and to allow the RCB to survive and continue serving its parishioners and ministries without the risks and strains of further litigation.

4.      On October 26, 2016, the RCB filed its Debtor's Plan of Reorganization Dated October 26, 2016 (the "Plan").  Dkt. No. 757.  On January 10, 2017, the Court entered Findings of Fact and Conclusions of Law Regarding Debtor's Plan of Reorganization Dated October 26, 2016 (the "Plan Findings").  Dkt. No. 839.  On January 13, 2017, the Court confirmed the Plan by entry of its Corrected Order Confirming Debtor's Plan of Reorganization Dated October 26, 2016 (the "Confirmation Order").  Dkt. No. 843.   The Effective Date under the Plan occurred on February 14, 2017.  Dkt. No.  846.

5.      On June 12, 2017, the Court entered its order authorizing entry of final decree and closing the RCB's Chapter 11 case.  Dkt. No.  949.

**Plaintiffs' First Amended Complaint Asserting Pre-Petition Claims**

6.      On February 15, 2022, John JK Doe #1, et al., (collectively "Plaintiffs") filed a First Amended Complaint in California Superior Court, San Joaquin County Case No. STK-CV-UPI-2020-11094 entitled John JK Doe #1, John TK Doe #2, John ML Doe #3 v. Diocese of Stockton, et al., ("State Court Action").   The first amended complaint identified the Defendant Moving Parties for the first time and was served on the RCB on March 1, 2022 (the "First Amended Complaint").[3]

7.      The RCB timely removed the State Court Action to this Court by filing a Notice of Removal with the State Court and with the Bankruptcy Court on March 30, 2022.  See Dkt No. 1 in this adversary proceeding for the Notice of Removal filed in the Bankruptcy Court.

---

[3]  Plaintiffs' original complaint listed as defendants "Roe Diocese," "Roe Parish," and "Roe Bishop."

8.      As reflected on the face of the First Amended Complaint, the alleged conduct that forms the basis for Plaintiffs' claims occurred during the years 1976-1980, more than 30 years prior to the Petition Date.  Based on the allegations in the complaint, the conduct forming the claim asserted by Doe #1 occurred from 1976-1977, the conduct forming the claim asserted by Doe #2 occurred from 1977-1980, and the conduct forming the claim asserted by Doe #3 occurred from 1977-1979.  First Amended Complaint ¶¶ 1-3, 11, 13, and 15.  Thus, the claims alleged in the First Amended Complaint are all based on alleged conduct before the Petition Date and constitute pre-petition claims.

9.      Defendant St. Anne Church did not exist as a civil entity at the time of the alleged conduct.  St. Anne Church was incorporated on December 18, 2002, more than 20 years after the alleged conduct forming the asserted claims.  *See* Request for Judicial Notice, Certification of Status from the California Secretary of State attached to the Exhibit Document filed herewith as Exhibit 1.  As noted, Cardinal Mahony was not appointed Bishop of Stockton until 1980.

10.     At the time of the bankruptcy filing and confirmation of the Plan, the RCB was not aware of any alleged claims by the Plaintiffs in the First Amended Complaint or of any claims by the Plaintiffs regarding Oliver O'Grady, nor had the Plaintiffs brought such claims to the attention of the RCB, directly or through a complaint in the Superior Court or as a claim in the bankruptcy.  *See* Declaration of Paul N. Balestracci filed herewith.

**Plaintiff's First Amended Complaint Asserts Tort Claims Discharged and Enjoined by the Plan and Confirmation Order**

11.     Plaintiffs' claims constitute Tort Claims under the Plan (*i.e.*, alleged acts relating to abuse occurring prior to the Petition Date).  Plan § 3.125.  As Tort Claims treated under the Plan, Plaintiffs' claims were discharged and enjoined by the Plan and Confirmation Order as to the Defendant Moving Parties.  Plan §§ 30.1, 30.5; Confirmation Order ¶¶ 5, 6, 20, 22, and 23.  Each of the Defendant Moving Parties is a Diocese Party or Participating Party, and thus, a Protected Party under the Plan via the discharge and/or other injunctions contained in the Plan and

///

///

Defendants' Motion to Dismiss and for Contempt

1  Confirmation Order.  Plan §§ 3.39, 3.79 and 3.104.[4]

2      12.    The State Court Action and the First Amended Complaint violate the discharge and

3  other injunctions contained in the Plan and Confirmation Order as to all causes of action against

4  the Defendant Moving Parties.  Plaintiffs are bound by the Plan and Confirmation Order.  11

5  U.S.C. § 1141(a) and (d)(1).

6      13.    The RCB is informed and believes that Plaintiffs contend that their claims were not

7  discharged and enjoined by the Plan because at the time the RCB's bankruptcy case was

8  commenced such claims were subject to a statute of limitations affirmative defense and now the

9  California legislature has revised the statute of limitations.  To the contrary, both the Confirmation

10  Order and the Plan specifically state that such claims are discharged and subject to the injunctive

11  provisions of the Plan:  "For purposes of clarity, the Debtor and the Reorganized Debtor shall be

12  discharged from and their liability shall be extinguished completely as to any Tort Claim, including

13  any Tort Claim that was barred by the applicable statute of limitations as of the Bar Date but may

14  be no longer barred by the applicable statute of limitations in the future for any reason, including,

15  for example, the passing of legislation that revives such previously time-barred Tort Claim."  *See*

16  Confirmation Order at ¶¶ 6 and 20(c) (same); *see also* Plan §§ 30.1(c) and 30.5(c) (same).

17      14.    Moreover, a claim under Bankruptcy Code section 101(5) includes a claim that is

18  barred by the statute of limitations.  *Midland Funding, LLC v. Johnson*, 137 S. Ct. 1407, 1414

19  (2017) ("The bankruptcy system, as we have already noted, treats untimeliness as an affirmative

20  defense.  The trustee normally bears the burden of investigating claims and pointing out that a

21  claim is stale.").  Further, under California law, the statute of limitations operates as an affirmative

22  defense to a claim for relief.  *Norgart v. Upjohn Co.*, 21 Cal4th 383, 395, 396 (1999).  The defense

23  is forfeited or waived if not appropriately raised by a defendant by answer or in a demurrer.  *Minton*

24  *v. Cavaney*, 56 Cal2d 576, 581 (1961); *Amaro v. Anaheim Arena Mgmt., LLC*, 69 Cal.App.5th

25  521, 541 (2021).  Thus, the statute of limitations is not jurisdictional or otherwise a bar to holding

26  a claim in a bankruptcy case.  The United States Supreme Court's ruling in *Midland* is directly on

[4] The Confirmation Order and Plan do not protect defendant Oliver Francis O'Grady.  See Plan § 30.8; Confirmation Order ¶ 23.  This Motion does not seek any relief with respect to any claims against that defendant.

point as to Plaintiffs' anticipated argument that the Plaintiffs' claims were not "claims" under the Bankruptcy Code or were not "Tort Claims" subject to the discharge and other injunctions in the Plan and Confirmation Order.

15.     In 2019, the California Legislature enacted amendments to Code of Civil Procedure section 340.1 effectively eliminating the statute of limitations defense for any claims of childhood sexual abuse filed between January 1, 2020, and December 31, 2022.  Cal. Civ Proc. Code §340.1(q).  All claims for childhood sexual abuse commenced within this three year "window" have been coordinated into Judicial Council Coordinated Proceeding No. 5108 in Alameda County Superior Court for all cases filed in Northern California.  Within the amendment to section 340.1, the legislature created a new remedy for a "cover up" of sexual abuse.  Cal. Civ. Proc. Code §§ 340.1(b)(1) and (2).  The court in the coordinated proceeding has held that the "…actions that comprise a cover up were an intentional tort at common law.  This is not a situation where the legislature created a new cause of action with a new and adequate remedy……." *See* Order Denying Motion of Defendants on Constitutionality of CCP 340.1 Amendments, In re: Bay Area Clergy Cases, (April 29, 2021), Superior Court of Alameda County, JCCP 5108, p.28: 19-31: 10; 43: 19-21, attached to the Exhibit Document filed herewith as Exhibit 2.

16.     Thus, the terms of the Plan and Confirmation Order, the Bankruptcy Code's definition of a claim in section 101(5), Supreme Court precedent, and the ruling of a California Superior Court in the Coordination Proceeding all establish that the causes of action asserted in the First Amended Complaint are pre-petition claims and are Tort Claims subject to the discharge and injunction provisions of the Plan and Confirmation Order.

**Plaintiffs Are Bound by the Plan and Confirmation Order Discharge and Injunction Provisions**

17.     During the RCB's bankruptcy case and working with the Official Committee of Unsecured Creditors ("Committee"), the Court approved a very robust notice procedure for the deadlines and procedures for filing claims. *See* Order: (1) Fixing Time for Filing Proofs of Claim; (2) Approving Claim Forms; and (3) Approving Manner and Form of Notice ("Bar Date Notice Order").  Dkt. No. 262.  The notice procedures included direct mailing the Abuse Claims Bar Date

Notice and Sexual Abuse Proof of Claim to (i) all known claimants, (ii) each household on the current mailing list of each parish, and (iii) the alumni list for any parish schools. Bar Date Notice Order ¶ 11. The notice procedures also included substantial and repeated Publication Notice (as defined in the Bar Date Notice Order) that included the deadline and procedures for filing abuse claims in national and local newspapers (including in both Spanish and English). Bar Date Notice Order ¶ 12. Further, the notice procedures included bi-weekly announcements (from mid-May to mid-August) of the abuse claim filing requirements and procedures in bulletins produced by parishes and missions located within the geographic territory of the Diocese (in various languages). Bar Date Notice Order ¶ 13.

18.     The Court-approved Abuse Claim Bar Date Notice contained the following statements under the heading Consequences of Failure to File a Proof of Claim: "Any person who has a Sexual Abuse Claim and does not file a Sexual Abuse Proof of Claim by that date may not be treated as a creditor for voting or distribution purposes under any plan of reorganization and such claims may be subject to discharge…Further, if such Sexual Abuse Claim is discharged, the Sexual Abuse Claimant will be forever barred and prevented from asserting his or her Sexual Abuse Claim against the Debtor or its property, and may not receive any payment or distribution in connection with such Sexual Abuse Claim." Bar Date Notice Order, Exhibit D.

19.     The RCB complied with the notice procedures contained in the Bar Date Notice Order, including direct mailings of the Abuse Claim Bar Date Notice. The declarations of service and publication in accordance with the Bar Date Notice Order were filed with the Court. *See* Dkt. Nos. 266, 274-278, 295, and 313-314. These declarations specifically included evidence of the process for obtaining the then-current mailing lists for parishes and any missions located within the parishes, and the alumni list for Catholic pre- and elementary (K-8) schools in the Diocese. Ultimately, this effort resulted in mailings to 80,846 names. Further, the list specifically included mailing lists from St. Anne Church and St. Anne schools. *See* Declaration of Sister Terry Davis Regarding Compliance with Order Requiring Notice of Sexual Abuse Claims Bar Date and Exhibit A thereto at Dkt. Nos. 274 and 275; *see also* Declaration of Richardo Tejeda Romero Regarding Compliance with Order Requiring Notice of Sexual Abuse Claims Bar Date and Exhibit A thereto

at Dkt. Nos. 276 and 277.[5]

20.     The last names of each of the Plaintiffs appear on the list of households obtained from St. Anne Church that were served with the direct mailing service of the Abuse Claim Bar Date Notice.  *See* Declaration of Dyan Hollenhorst filed herewith.[6]

21.     In connection with solicitation of acceptances of the Plan and Plan confirmation, the Court twice approved Solicitation Procedures in connection with approval of the Disclosure Statement to Accompany the Debtor's Plan of Reorganization Dated October 26, 2016 (Dkt No. 761) and for notice of the Plan and Plan confirmation hearing as providing "fair and appropriate" notice, "satisfy[ing] the requirements of the Bankruptcy Code" and "constituting reasonable and adequate notice."  *See* Solicitation Procedures Order (Dkt. No. 764) and Plan Findings at ¶ D. Such procedures also included direct mailings and publication.  Solicitation Procedures Order ¶¶ 3, 15 and 16; Plan Findings citing certificates of service of the solicitation package, ballot and release and proof of publication at Docket Nos. 768 through 772, 776 and 813.

22.     As noted in the Plan Findings, the RCB accomplished the service and publication required by the Solicitation Procedures Order by direct mailings and publication.  Docket Nos. 768-770 and 818-819 show proof of direct mailings.  Docket No. 810 is the proof of publication (including as Exhibit 3 publication twice in the Lodi newspaper of general circulation where St. Anne Church is located).

23.     The notices served and published complied with Fed. R. Bankr. Proc. 2002(c)(3) requiring conspicuous language and details regarding any plan injunctions.  *See* Dkt. Nos. 766 and 767.  The Disclosure Statement and Plan also both comply with Rule 2002(c)(3).[7]  For example, the Notice of (I) Objection Deadline for Plan, Insurance Settlement Agreement and Participating

---

[5]  The Abuse Claim Bar Date Notice also specifically includes a list of those credibly accused and the location and dates of their assignments, including the assignment for defendant Oliver Francis O'Grady at St. Anne Church.

[6]  A redacted version of the exhibit is attached to the exhibit document for the Hollenhorst Declaration.  An application to file the unredacted version is being filed and if approved, the unredacted version of the exhibits will be filed under seal.

[7]  There were numerous proofs of service and supplemental proofs of service filed regarding the Plan confirmation.  The RCB identifies the most relevant in this Motion but reserves the right to refer to others in the main case record.

Party Agreement; (II) Plan Confirmation Hearing; and (III) Post-Petition Abuse Claim Deadline (Dkt. No. 766) included, *inter alia*, the following statement:  "As part of the Plan, the Debtor will seek the **entry of an Order permanently enjoining and barring all Claims by any Person or Entity against the Settling Insurers and Participating Parties as well as the Debtor, and releasing the Settling Insurers and Participating Parties from any further liability, relating to Tort Claim Interests (as specifically defined in the Plan, which includes Claims related to sexual abuse and insurance coverage for such Claims) as part of the Plan, the confirmation of which is a condition of the Insurance Settlement Agreement and Participating Party Agreement.**"  (Bold in original).  The notice also defined the Participating Parties as including the Parishes, and cautioned, in bold and all capital letters that if a person holds claims against the Debtor, the Settling Insurers or the Participating Parties, their rights may be affected.  *See* Dkt. No. 766.  This same language was in the publication notice for the Plan and the Plan confirmation hearing.  *See* Dkt. No. 810.

24.    The RCB also sought and obtained the appointment of a Future Claims Representative in the case.  *See* Motion for Order Authorizing Appointment of a Legal Representative to Represent the Interests of Future Abuse Claimants and Minors at Dkt. No. 199 ("Future Claims Representative Motion").[8]  Generally, the Future Claims Representative was appointed to protect the interests of victims of abuse who are:  (1) persons who were effectively minors for purposes of California's applicable limitations periods or (2) persons who asserted that they did not "discover" their claims until after the first service of the notice of the claims bar date under circumstances that, absent the bankruptcy filing, would excuse such abuse claimants from filing a claim prior to the Bar Date Notice Date.  *See* Order Authorizing Appointing a Legal Representative to Represent the Interests of Future Abuse Claimants and Minors at Dkt. No. 263, ¶¶ 4 and 5.  The Future Claims Representative was authorized to, and did, take all actions to represent the interest of Future Abuse Claimants.

---

[8]  The term "Future Claims Representative" is a bit of a misnomer in that the legal representative was appointed to represent existing claimants' interests where the claimant was a minor or had not made the causal connection to past abuse.  To be clear, the interests represented were pre-petition claims.

25.     Based on the foregoing, Plaintiffs received reasonable and adequate notice of the Abuse Claim Bar Date and the Plan confirmation proceedings, and they are bound by the Plan and Confirmation Order.  Plaintiffs were not served directly because, as noted above, at the time of the bankruptcy filing and confirmation of the Plan, the RCB was not aware of any claims regarding Oliver O'Grady and the Plaintiffs, nor had the Plaintiffs brought such claims to the attention of the RCB, directly or through a complaint in the Superior Court or as a claim in the bankruptcy.  *See* Declaration of Paul N. Balestracci filed herewith.

**The First Amended Complaint Violates the Confirmation Order Discharge and Injunction Provisions and Should be Dismissed with Prejudice**

26.     Plaintiffs' complaint fails to allege a cognizable legal theory or allege sufficient facts to support a cognizable legal theory.  *See Caltex Plastics, Inc. v. Lockheed Martin Corp.*, 824 F.3d 1156, 1159 (9th Cir. 2016).   Further, Plaintiffs have violated the discharge and other injunctions in the Plan and Confirmation Order, for which the RCB and moving parties seek an award of their attorneys' fees and costs subject to further proof upon conclusion of this matter.

27.     The RCB notes that Plaintiffs are not without a potential remedy.   The Plan provides for recovery for claimants holding an Unknown Tort Claim as defined under the Plan in Class 15.  Further, as is the practice of the RCB, the RCB has offered assistance through its Diocesan Victim Assistance Ministry.   *See* [https://stocktondiocese.org/victims-assistance-ministry](https://stocktondiocese.org/victims-assistance-ministry).

28.     Remedies for violations of the discharge and other injunctions in the Plan and Confirmation Order include holding the offending party in contempt.  *Taggert v. Lorenzen*, 139 S.Ct. 1795, 1804 (2017) ("A court may hold a creditor in civil contempt for violating a discharge order where there is not a "fair ground of doubt" as to whether the creditor's conduct might be lawful under the discharge order.").  Section 105 of the Bankruptcy Code allows the bankruptcy court to exercise contempt powers.  *See ZiLOG, Inc. v. Corning*, 450 F.3d 996, 1007 (9th Cir. 2006) ("A party who knowingly violates the discharge injunction can be held in contempt under section 105(a) of the bankruptcy code."); *see also Walls v. Wells Fargo Bank, N.A.*, 276 F.3d 502, 507 (9th Cir. 2002) (holding that civil contempt is an appropriate remedy for a willful violation of

section 524's discharge injunction.). Civil contempt under section 105 serves a remedial purpose, and the intent of the creditor in violating the discharge injunction is irrelevant. *Knupfer v. Lindblade*, 322 F.3d 1178, 1191 (9th Cir. 2003). Compensatory civil contempt allows an aggrieved party to obtain compensatory damages, attorneys' fees, and the offending party's compliance with the discharge injunction. *Walls v. Wells Fargo Bank*, 276 F.3d 502, 507 (9th Cir. 2002).

29.     Bankruptcy courts within the Ninth Circuit regularly exercise their contempt power under section 105(a) to remedy violations of court orders. A court may impose civil contempt sanctions where there is clear and convincing evidence that the creditor (1) knew the discharge injunction was applicable and (2) intended the actions which violated the injunction. *ZiLOG, Inc.,* 450 F.3d at 1007 ("Generally, a party cannot be held in contempt for violating an injunction absent knowledge of that injunction." *In re Dyer*, 322 F.3d 1178, 1191-92 (9th Cir. 2003) (citing *Bennett*, 298 F.3d at 1069, and *Jove Eng'g, Inc. v. IRS*, 92 F.3d 1539, 1555 (11th Cir. 1996)) ("Knowledge of the injunction under § 524, which is a prerequisite to its willful violation, cannot be imputed; it must be found." *Zilog* at 1008*).*

30.     Defendant Moving Parties seek an award against Plaintiffs' attorneys including their reasonable attorneys' fees and costs in taking action to obtain dismissal of the State Court Action and the First Amended Complaint as to the Defendant Moving Parties. Defendant Moving Parties reserve the right to seek additional compensatory damages as well. Defendant Moving Parties will file a separate motion at a later date to seek approval of such fees and damages.

31.     Defendant Moving Parties respectfully request the Court to take judicial notice of the pleadings in the record of the main bankruptcy case, including all such pleadings cited herein and the public record of the creation of St. Anne Church in 2002. Judicial notice under Rule 201 permits a court to notice an adjudicative fact if it is "not subject to reasonable dispute." Fed. R. Evid. 201(b). A fact is "not subject to reasonable dispute" if it is "either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(1)–(2). *Biggs v. Capital Factors*, 1997 U.S. App. LEXIS 19191, 4 (9th Cir. 1997).

Defendants' Motion to Dismiss and for Contempt

1    WHEREFORE, Defendant Moving Parties hereby request the Court to enter an order as

2   follows:

3       1.    Dismissing the claims against the Defendant Moving Parties in the State Court

4   Action and First Amended Complaint with prejudice;

5       2.    Finding Plaintiffs' attorneys in contempt for violating the discharge and injunctions

6   in the Plan and Confirmation Order;

7       3.    Awarding the Defendant Moving Parties their reasonable attorneys' fees and costs

8   subject to further proof; and

9       4.    For such other and further relief as the Court deems just.

10  Dated: April 6, 2022

11                              FELDERSTEIN FITZGERALD WILLOUGHBY
                                PASCUZZI & RIOS LLP
12
                            By:  /s/ Paul J. Pascuzzi
13                              PAUL J. PASCUZZI
                                Attorneys for The Roman Catholic Bishop
14                              of Stockton, Pastor of St. Anne Church, and
                                Cardinal Roger Mahony
15

16

17

18

19

20

21

22

23

24

25

26

27

28

-13-                                    Defendants' Motion to Dismiss and for Contempt